## Case No. 13,416.

### STEVENSON v. HARE.

[2 Sawy. 583.] [1]

District Court, D. California. March 23, 1874.

SEAMEN—WAGES—DESERTION—SHIPPING COMMISSIONER.

The provisions of section 23 of the shipping commissioners' act of June 7, 1872 [14 Stat. 267], do not apply to cases embraced within the provisions of section 55.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[This was an action for wages by J. D. Stevenson, United States shipping commissioner, against Charles Hare.]

W. W. Morrow, for plaintiff.
S. W. Holliday, for defendant.

HOFFMAN, District Judge. By the fifty-fifth section of the act of congress of June 7, 1872, commonly known as the "Shipping Commissioners' Act," it is provided, in substance, that all wages of seamen forfeited for desertion "shall be applied in the first instance in payment of the expenses occasioned by such desertion to the master or owner of the ship from which such desertion has taken place, and the balance, if any, shall be paid by the master or owner to any shipping commissioner resident at the port at which the voyage of such ship terminates. * * * And in case any master or owner neglects or refuses to pay over to the shipping commissioner such balance aforesaid, he shall incur a penalty of double the amount of such balance, which shall be recoverable by the commissioner, in the same manner that seamen's wages are recovered."

The present action is brought to recover the sum of $109.14, being double the amount of wages due to one Ah Lee at the time of his desertion from the vessel. The respondent admitting that $54.57 was due Ah Lee at the time of the desertion, has shown that the expenses occasioned by the desertion were largely in excess of that sum, and that no balance remains to be paid. The fact thus proved is not disputed by the libellant, but he insists that the proof is inadmissible, inasmuch as the respondent, though often requested, has omitted to furnish any account of the deductions, which, he claims, should be made from the wages, as required by section 23 of the act, and, therefore, in accordance with the provisions of that section, no deduction can now be allowed.

Section 23 is as follows: "Every master shall, not less than forty-eight hours before paying off or discharging any seaman, deliver to him, or, if he is to be discharged, before a shipping commissioner, to such shipping commissioner, a full and true account of his wages, and all deductions to be made therefrom, on any account whatsoever; and in default shall, for each offense, incur a penalty not exceeding fifty dollars, and no deduction from the wages of any seaman shall be allowed, unless it is included in the account," etc.

The question to be decided is, do the provisions of this section apply to cases embraced within the provision of section 55? In my opinion, it is clear that they do not. 1. Section 23 requires an account of wages and deductions to be made therefrom, to be furnished to the seaman or the commissioner at least forty-eight hours before paying off or discharging the former. This, obviously, refers to wages due seamen who are to be paid off or discharged. It has no more application to the case of a deserter, who is neither to be paid off nor discharged, than to that of a deceased seaman. In those cases, moreover, where the man is not to be discharged before the commissioner, a compliance with the terms of this section would, generally, be impossible, for the deserter would usually be out of the reach of the master.

2. The "deductions" referred to are deductions to be made from wages to be paid, such as advances, money furnished during the voyage, supplies from the slop-chest, etc. The expenses occasioned by a desertion are not treated by the act as "deductions" to be allowed the master. They are charges, to the payment of which the wages forfeited are "in the first instance to be applied," and the "balance" only is to be paid to the commissioner. The practical effect is, of course, the same, by whatever term we characterize them. But the language of the section becomes significant when the question arises whether the "expenses" mentioned in the fifty-fifth section are embraced within the "deductions" spoken of in the twenty-third section.

3. If the master has committed any offense, it is a violation of the twenty-third section. He is, therefore, liable, if at all, to the penalties denounced in that section, to wit: The disallowance of any deduction from the wages earned, and a penalty not exceeding $50. If he fails to pay over the balance of forfeited wages, after paying expenses, he becomes liable, under the fifty-fifth section, for double the amount of such balance. The present suit is an attempt to enforce this latter liability, when the only offense which the master can have committed is a violation of the twenty-third section.

For these reasons, I think it clear that the act does not require an account of expenses occasioned by the desertion to be furnished to the commissioner. That the omission to do so does not forfeit the right of the master to have those wages applied, in the first instance to the payment of such expenses—and that when sued for double the amount of a balance alleged to be due, he may defeat the suit by showing that the expenses have equaled or exceeded the amount of such forfeited wages, and that no balance is due.

But notwithstanding that the statute does not require the master to furnish an account of expenses occasioned by the desertion to the commissioner, it is evidently fit and proper that he should do so. A knowledge of what expenses are claimed to have been incurred is necessary, to enable the commissioner to ascertain what balance, if any, is due to the United States, and a fair and just account rendered by the master will usually lead to a prompt settlement of the matter without resorting to a suit, which, in

the absence of all information on the subject, the commissioner may feel it his duty to bring.